Reed, President.
 

 The case upon which we arevnow to give our judgment, comes before us under the following circumstances : — Captain Montgomery was master and commander of the ship, called the General Greene, designed for a voyage to Martinico. While the ship lay in the river, a severe frost happened, which occasioned a great delay, and the owners thought proper to alter their plan. Differences then arose : they dismissed Captain Montgomery, and took the ship from him. Upon this, he preferred his libel in the court of admiralty, complaining of the injury, as done to him in the port of Philadelphia, and within the jurisdiction of the court of admiralty. The answer of the owner to the libel is, that they had a right to remove their captain when they pleased, and that they are willing to pay him any damages he may have received by the removal.
 

 Two general questions arise: 1. Is the matter complained of within the admiralty jurisdiction ? 2. On the merits, had the owners a right to remove Capt. Montgomery?
 

 The first question is subdivided into two others. 1. Had the court of admiralty cognisance of this cause, considering the place where the offence is charged to have been done? 2. Is the subject-matter of admiralty cognisance ?
 

 All the proceedings are laid to have taken place within the port of Phi adelphia. The respondents say, that the river Delaware is not within th admiralty jurisdiction, and to prove this, they cite Ld. Raym. 1453. But, appears to us, that, from the 12th and 15th
 
 Mia. II,
 
 the admiralty has h jurisdiction on all waters out of the body of the county. There has been great debate as to what is * meant by high seas. A road, haven, *- or even river, not within the body of the county, is high sea, in the idea civilians. Therefore, if the river Delaware is out of the body of any count
 
 *48
 
 we think it clear, that it is within the admiralty jurisdiction. And the court would endeavor to enlarge its jurisdiction, rather than a place should remain subject to no control. . The place where the fact was done, which is complained of a-s an injury, is expressly alleged in the libel, to be within the jurisdiction of the admiralty. This is not contradicted in the answer; and we must take up the matter as it stands upon the libel, not on the evidence; because there is no opportunity to traverse. On this point, therefore, we rather incline to say, the jurisdiction is well laid.
 

 But what we found our decree upon, is the other particular, the subject-matter. It has been contended by the counsel for the respondents, that the court of admiralty cannot carry an agreement into specific execution; and, also, that this is never done, even in a court of chancery, for one party, unless they could do it for the other, in case they wished for a specific performance. To this, it has been answered, that otherwise there is no complete remedy.
 

 It was observed, by one of the counsel for the respondents, that it is difficult to know in what light to consider the application in this instance. It appears to us, however, that it can be considered in no other light, than as an application to compel a specific performance of an agreement : And to show that this can be done by a court of admiralty, Vent. 32, was cited ; where it appears, that a master of a vessel in Spain had been obliged to take on board his vessel forty butts of wine. But the determination of the admiralty in England seems to be rather out of respect to the foreign court, than from an opinion, that they could do this by virtue of their authority originally ; for, it is introduced by saying, that the judgment of a foreign court ought to be supported, even as to what might not be cognisable originally there.
 

 It has been said that the court of admiralty acts
 
 in rem,
 
 that is, only to make the objects of dispute responsible. This, however, is a confidential trust, and we see no instances of any such jurisdiction. Does the master ship himself on the credit of the ship ? No ; it is no more than a contract. Whether the doctrine of mutuality of remedies be a fixed rule in the court of chancery, I am not altogether certain ; 'but it is reasonable, that the parties should stand on an equal footing. No such remedy could be obtained by the owners against the master. It is said, he might be attached, if he failed of his duty ; so might the owners ; still the ship would be liable, as against the owners. Indeed, I know of no case where an attachment has issued, unless for some conten nt ; nor does Carthew contradict this.
 

 If the libel is considered as complaining of a
 
 trespass,
 
 instead of demanding performance of the agreement, I do not see that this will help the appellant; for, an admiralty court cannot give damages,
 
 (a)
 

 * This seems to be assigning to this court a jurisdiction which ii has not. We are, therefore, unanimously of opinion, that, from the object of the libel, it cannot be supported.
 

 As to the other point, the dismissal of the master, we are of opinion, that upon a general retainer, for no particular voyage, the master may
 
 *49
 
 be dismissed at any time, without cause assigned ; but that where there is a charter-party, bills of landing, and a particular voyage agreed upon, though the owners may dismiss the master, yet they would be liable in a common-law court. Suspicions might probably be sufficient to discharge, without proofs ; but, if the dismissal should appear to have been a wanton abuse, the jury would give great damages, otherwise little ; or, as the circumstances might be — nothing,
 

 (a)
 

 We therefore affirm the decree with costs,
 

 (b)
 

 (a)
 

 But see the case of Talbot v. Three Brigs, &c.,
 
 post,
 
 p. 95, where Dickenson, President, said, “It is now settled, that damages
 
 may
 
 be assessed in the admiralty."
 

 (a)
 

 See Respublica v. Lacaze, 2 Dall. 118.
 

 (b)
 

 The decree of the court of admiralty in this case is reported in the volume of Admiralty Judgments by Judge Hopkinson, page 24, and in 2 Peters’ Admiralty Decisions, p. 897. Upon the subject of admiralty jurisdiction, see Jennings v. Carson, 1 Pet. Ad. 8; Gardner v. The N. Jersey, Id. 231; Brevoor v. The Fair American, Id. 92; Moxon v. The Fanny, 2 Id. 325, &c.